In re Melissa R. HARRIS, Debtor.

No. 03–28031–SVK.

United States Bankruptcy Court,
E.D. Wisconsin.

May 25, 2004.

Neil R. McKloskey, Green Bay, WI, for Debtor.

## MEMORANDUM OPINION

SUSAN V. KELLEY, Bankruptcy Judge.

The Debtor, Melissa Harris, filed a motion seeking to hold Chet Harris and his attorney Katherine L. Pleger in contempt. The motion alleges that Chet's state court action to reduce maintenance payments payable by Chet to the Debtor, violated either the automatic stay or the discharge injunction.

## FACTS

From the pleadings filed by the parties and the records of the Brown County Circuit Court, the Court finds the facts to be as follows: The Debtor filed a petition to divorce Chet on November 7, 2001. A contested trial was held, and divorce was granted on December 11, 2002, with an oral decision announced on January 24, 2003. The parties were instructed to agree upon the terms of the written judgment in conformity with the oral decision. That took some time and negotiation, and the written Judgment of Divorce was finally entered by the Brown County Circuit Court on April 22, 2003.

Meanwhile, a Stipulation for Temporary Order had been filed on November 30, 2001, requiring the Debtor to make monthly mortgage payments on the marital residence. However, the Temporary Order was amended on December 2, 2002, relieving the Debtor from making the mortgage payments. Associated Bank instituted foreclosure proceedings against the marital residence on November 29, 2002, and a Judgment of Foreclosure was entered on January 31, 2003.

Notwithstanding the Judgment of Foreclosure (after which it would have been highly unusual for the Bank to accept monthly mortgage payments), the April 22, 2003 Judgment of Divorce reinstated the Debtor's obligation to make the payments, effective February 1, 2003, until the residence was sold. The residence was sold (at private sale, not foreclosure) on July 31, 2003, the mortgage was paid in full, and Chet and the Debtor divided the remaining proceeds of the sale pursuant to the Judgment of Divorce.

In the interim, the Debtor filed a chapter 7 petition on May 31, 2003, and listed Chet Harris, and his divorce attorney, Katherine Pleger, in her bankruptcy schedules. On September 8, 2003, a few days prior to the Debtor's bankruptcy discharge, Attorney Pleger filed a Motion on Chet's behalf in the Circuit Court for Brown County, to reduce maintenance payable by Chet to the Debtor. The Motion included an Order to Show Cause, requiring the Debtor to appear in person to show cause why an Order should not be entered to "suspend or otherwise decrease [Chet's] maintenance obligation in an amount commensurate with the equity he has lost and the costs and expenses he has incurred due to [the Debtor's] failure to make mortgage payments as required … by the Judgment of Divorce."

Exactly which costs and expenses he incurred is not detailed; Chet had filed his own bankruptcy on March 21, 2003 and received a discharge on July 17, 2003. The Debtor filed this Motion to hold Chet and his attorney in contempt. She seeks a total award of $1,200 for lost wages, punitive damages and attorneys fees. On March 3, 2004, the Circuit Court for Brown County denied Chet's Motion to Amend the Divorce Judgment.

## DISCUSSION

 The automatic stay is one of the most important effects of filing bankruptcy. The stay protects the debtor from the assertion of claims that were or could have been filed prior to the bankruptcy peti-

tion.[1] There are exceptions to the stay,[2] but the exceptions are to be narrowly construed in order to give the stay broad effect. Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy* § 3.02[A] (2000).

The statutory exceptions to the stay relevant to marital and family disputes are found in Bankruptcy Code § 362(b)(2). For example, § 362(b)(2)(A)(i) provides that the stay does not prevent the establishment of paternity. Section 362(b)(2)(B) excepts from the operation of the automatic stay the *collection* of alimony, maintenance or support from property that is not property of the bankruptcy estate. Chet's action does not seek to collect alimony, maintenance or support from the Debtor, and this section does not apply.

■■■■ The issue in this case is the application of § 362(b)(2)(A)(ii) which states that a bankruptcy petition does not operate to stay:

the commencement or continuation of an action or proceeding for ... the establishment or modification of an order for alimony, maintenance, or support.

■■ There is relatively little case law interpreting this exception to the stay. *Allen v. Allen,* 275 F.3d 1160, 1163 (9th Cir.2002); *In re Massengill,* 227 B.R. 697, 699 (Bankr.S.D.Ind.1997). The exception, added to the Code by Congress through the Bankruptcy Reform Act of 1994, was designed to "provide greater protection for alimony, maintenance, and support obligations *owing to* a spouse, former spouse

or child of a debtor in bankruptcy." *Allen,* 275 F.3d at 1163 (emphasis supplied; citation omitted).

In this case, Chet's Motion was not seeking to increase the Debtor's obligation to make support payments. Rather, the Motion required the Debtor to show cause why the support payments payable by Chet to the Debtor should not be reduced, as a result of the Debtor's failure to make the mortgage payments. The parties have not cited, and the Court could not locate, a case in which § 362(b)(2)(A)(ii) applied to except an action to reduce maintenance payable *to* the Debtor, as opposed to attempts to modify maintenance payable *by* the Debtor. The commentators certainly suggest no such application. According to *Norton Bankruptcy Law and Practice 2d* § 36.16 (2001): "In amending this section Congress expressed a strong desire that a debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations." Ginsberg & Martin similarly note that "these claims are nondischargeable and will survive the bankruptcy in any event," and state that this exception means that the debtor can be forced to *make payments* on support obligations immediately. Ginsberg & Martin, *supra,* at § 3.02(H) (emphasis supplied).

■■ Rather than seeking modification of a nondischargeable obligation on the Debtor's part, Chet's motion sought to reduce Chet's maintenance because the Debtor failed to comply with a dischargeable property division obligation.[3] The stay does

---

**1.** 11 U.S.C. § 362(a) reads in pertinent part: ...[A] petition filed under section 301, 302, or 303 of this title... operates as a stay, applicable to all entities, of-(1) the commencement or continuation... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title or to

recover a claim against the debtor that arose before the commencement of the case under this title.

**2.** 11 U.S.C. § 362(b)

**3.** Support obligations are nondischargeable under Bankruptcy Code § 523(a)(5), while obligations in the nature of property settlements

indeed apply to protect the Debtor and property of the Debtor from modification of property division obligations. As explained by Henry J. Sommer & Margaret Dee McGarity, *Collier Family Law and the Bankruptcy Code* ¶ 5.03[6] (2003): "Proceedings commenced during the bankruptcy case asserting property settlement claims against the debtor would also be prohibited in almost all cases." These experts advise: "The safest course for a creditor is to seek a bankruptcy court determination of its right to proceed before acting." *Id.* at ¶ 5.05[5].

Requiring the Debtor to show cause in a state court proceeding that could have been commenced prior to the Debtor's bankruptcy petition violates § 362(a)(1) of the Bankruptcy Code. Moreover, since Chet's Motion sought to reduce maintenance payable to the Debtor as a result of the Debtor's failure to comply with the terms of the property division portion of the Divorce Judgment, Chet's action was in the nature of a setoff of his maintenance obligation against the Debtor's property division obligation. Such a setoff is prohibited by Bankruptcy Code § 362(a)(7).

Construing the exception of § 362(b)(2)(B)(ii) narrowly, and given Chet's motivation to recover equity he lost in a property division, without seeking relief from stay or a determination that the Debtor's obligation should not be discharged under § 523(a)(15) of the Bankruptcy Code, Chet's Motion to reduce the maintenance he owed the Debtor violated the automatic stay.

Section 362(h) of the Bankruptcy Code reads in pertinent part:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

■ In order to recover damages under § 362(h), the Debtor has the burden of establishing the following elements by a preponderance of the evidence: 1) a bankruptcy petition was filed; 2) the debtor is an "individual" under the automatic stay provision; 3) the creditor had notice of the petition; 4) the creditor's actions were willful violations of the stay; and 5) the debtor suffered damages. *In re Pincombe*, 256 B.R. 774, 782 (Bankr.N.D.Ill. 2000). The first three elements are not in dispute.

■ Willfulness under § 362(h) requires knowledge on the part of the violating party that a formal bankruptcy petition has been filed. *In re Fridge*, 239 B.R. 182, 191 (Bankr.N.D.Ill.1999). Notice can be either through formal notice or otherwise. *Id.* (citing *Price v. Rochford*, 947 F.2d 829, 833 (7th Cir.1991)). Also, a willful violation of the stay does not require that the creditor had the specific intent to violate the stay. *Id.* (citing *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989)). In short, "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990). In this case, there is no doubt that Chet and his attorney were aware of the Debtor's bankruptcy and proceeded anyway. In fact, Chet's attorney had dismissed an earlier motion to hold the Debtor in contempt upon learning of the bankruptcy. Based on the definition of "willful" in the relevant

are generally discharged, unless an adversary proceeding is commenced in the Bankruptcy Court under § 523(a)(15) of the Bankruptcy Code. No such proceeding was commenced here.

cases, Chet's and his attorney's conduct was a willful violation of the stay.

If a willful violation of the automatic stay is found, the language of § 362 requires the court to award whatever actual damages are established. The words "shall recover" indicate that Congress intended that an award of actual damages, costs and attorney's fees is mandatory upon finding a willful violation of the stay. The Debtor claims she lost income of $200 and paid attorneys' fees of $800 as a result of Chet's Motion. Pursuant to § 362(h) of the Bankruptcy Code, these damages are recoverable by the Debtor.

The damages contemplated by § 362(h) are primarily those relating to "financial loss." *Aiello v. Providian Finan. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001). However, punitive damages may be appropriate upon the "additional finding of maliciousness or bad faith on the part of the offending creditor." *Crysen/Montenay Energy Co.*, 902 F.2d at 1105. The record is not sufficient to award punitive damages in this case. The Debtor's Motion for Contempt does not contain any evidence that Chet and his lawyer acted maliciously in bringing the Motion. The request for punitive damages is therefore denied.

Having determined that the filing of the Motion prior to the Debtor's discharge violated the automatic stay, the Court need not address whether continuing the action post-discharge violated the discharge injunction.

A separate Order will be entered requiring the payment of the $1,000 in damages incurred by the Debtor by Chet Harris and his attorney, jointly and severally.